WILLIAM WILLSHAW, Appellee, v. CHARLOTTE WILLSHAW LUICK et al., Appellants.

**FRAUDULENT CONVEYANCES:** Fiduciary Relations—Evidence. Evidence reviewed; and *held,* in view of the fiduciary relation which

a daughter held to her aged and uneducated father, that a deed from the latter to the former could not be sustained.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

MARCH 13, 1923.

REHEARING DENIED JUNE 22, 1923.

SUIT in equity, to set aside two deeds obtained from plaintiff, as alleged, by fraudulent pretense and undue influence. The defense was a general denial. The trial court entered a decree for plaintiff as to one of the deeds, and denied relief as to the other. Both parties appeal.—*Affirmed.*

*George F. Brooks* and *C. C. Putnam,* for appellants.

*H. H. Griffiths* and *John McLennan,* for appellee.

EVANS, J.—The defendant is the plaintiff's married daughter, and is his only child. Prior to the controversy herein involved, their relations had always been of the most affectionate and confiding character. Elizabeth Willshaw, the wife of plaintiff and the mother of defendant, died in April, 1920. Up to the time of her death, she was the fee owner of the homestead, which is referred to in this record as the Buchanan Street property. She was also the owner of a certain property described in the record as the Brereton property. The plaintiff was the owner of a property known as the Logan Street property. About the year 1919, the husband and wife had each executed a deed to the other, as grantees of their respective properties. The two deeds were placed in the hands of the daughter, with written instructions to hold the same until the death of one of the parents, and thereafter to deliver such deeds to the surviving spouse. The deed from Elizabeth Willshaw to William Willshaw covered the homestead property on Buchanan Street; that of William Willshaw to Elizabeth Willshaw covered the Logan Street property. By virtue of this arrangement, William Willshaw became the fee owner of the homestead at the time of the death of his wife. No disposition was made by Mrs. Willshaw

of the Brereton property. At the time of the death of his wife, William Willshaw was 62 years of age. He was a blacksmith by trade, and actually engaged in such occupation, and had been engaged therein for 40 years. He appears to have been a man of abundant industry and thrift and practical sense, but was lacking in education. He could neither read nor write, except that he could write his own name and read it after he had written it. Naturally, his inability to read kept him outside the range of general information which an ordinary man would acquire by a lifetime of current reading. During the lifetime of his wife, he depended upon her to read and to explain to him the contents of all instruments with which he might be concerned. After the death of his wife, he transferred that confidence to his daughter, who appears to be a well informed person, of perhaps more than ordinary education, and who undoubtedly entertained an affectionate regard for her father. She was appointed, on petition of her father, as administratrix of her mother's estate. Her father trusted her implicitly, and governed his business conduct quite uniformly in accord with her direction. On the 10th day of July, 1920, he executed a deed to her of his interest in the Brereton property. This was done pursuant to an adjustment between them, and there is no complaint of such transaction. On the 12th day of July, 1920, he executed a deed to her of his Logan Street property. This deed was prepared by a reputable attorney, who was also attorney for the administratrix of the estate. On the 28th day of July, 1920, he executed a deed to her of the Buchanan Street property, reserving to himself, however, a life estate therein. This was the homestead in which he lived. The latter two deeds were not delivered. Their execution was tentative, and done with a view of possible future delivery. These deeds were undoubtedly executed upon the advice of the daughter. The plaintiff was advised by the attorney to hold the deeds in his own control until such time as he decided to have them take effect, at which time he could deliver them. In November, he was advised by his daughter that it was legally necessary to have the deeds recorded. He therefore brought the deeds to her for that purpose. They were taken and placed of record by the daughter. It was in this manner that she acquired title to the property described in

the deeds. The net result of the transaction was to convey to the daughter all of her father's property, subject only to his occupancy of the homestead during his life. There was no consideration except the nominal sum of $1.00, which was paid by the daughter with careful formality. The relation of trust and confidence between the parties and of the special dependence by the father upon the daughter is virtually undisputed. The burden, therefore, was clearly upon the daughter to sustain the deeds by satisfactory evidence other than the conveyances themselves. The evidence adduced on behalf of the daughter pertaining to the homestead conveyance was stronger and more persuasive than that pertaining to the other conveyance. The decree of the trial court sustained the transaction as to the homestead. We are in accord with that finding. We are in accord also with the other branch of the decree, which is adverse to the daughter as to the Logan Street property. Only a question of fact is involved, and in view of our accord with the decree below, we are not disposed to enter into a discussion of the details of the evidence. Sufficient to say that we do not think that it was within the comprehension of the plaintiff at all that a recording of the instrument was presumptively an equivalent of delivery. It is quite manifest from the record that the daughter actively intended to acquire this title. Her intention in that regard, however, was not wholly selfish or hostile, and she is to be judged charitably. She did not actively intend to interfere with her father's dominion and enjoyment of the property. She believed that she could better protect both her father and herself by taking title to herself, rather than to leave title in him. The fact is, he was already paying court to another prospective wife. If the daughter's apprehensions were unduly excited by a knowledge of that fact, she was not the first daughter thus to stumble under like circumstances. The prospective marriage was later consummated, and a wide gulf has thereby been opened between father and daughter. The father ''cleaves to his wife'' and puts his trust in her as a good husband ought to do, and the marriage so far carries the index of future happiness. That the daughter should be unreconciled to the marriage does not reflect upon her real affection for her father or upon her good intentions in the method of protection adopted by her.

But the protection thus adopted by her is without the sanction of the law. She had no legal right to shield him against his will, or to take or hold his property for such purpose, however affectionate her mind had been. Her great mistake has been that she has resorted to litigation to defend her course. Both parties have appealed from the decree below. Such decree is now affirmed on both appeals. The costs of this court will be apportioned, as were the costs of the lower court, one half to each party.—*Affirmed on both appeals.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.